**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GREGORY G.,**

       **Plaintiff,**

v.

                       Civil Action 2:23-cv-2527
                       Judge James L. Graham
                       Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gregory G., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI").  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (SSE, ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), the administrative record (ECF No. 7), the supplemental administrative record (ECF No. 8), and the second supplemental administrative record (ECF No. 12).  Plaintiff did not file a reply memorandum.  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    **I.**        **BACKGROUND**

Plaintiff filed his application for DIB on March 19, 2021, and for SSI on May 28, 2021, both with a protective filing date of December 23, 2020, alleging that he has been disabled since January 1, 2020, due to club feet; neuropathy in his feet, legs, and hands; heart problems; and

chronic pain in his legs, feet, arm, neck, back, and stomach. (R. at 175–81, 182–87, 200.) Plaintiff's applications were denied initially in May 2021 and upon reconsideration in September 2021. (*Id.* at 38–77, 84–104.) On June 15, 2022, Administrative Law Judge Nicole Quandt ("ALJ") held a telephone hearing, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 16–37.) A vocational expert ("VE") also appeared and testified at the ALJ hearing. (*Id.*) On July 26, 2022, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 844–71.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 1–8.) This matter is properly before this Court for review.

## II.     RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to his conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, the Undersigned summarizes relevant portions of the transcript and will refer and cite to it as necessary in the discussion of the parties' arguments below.

### A.     Relevant Hearing Testimony and Statements to the Agency

The ALJ summarized Plaintiff's hearing testimony and statements to the agency as follows:

> *** [Plaintiff] testified that he has a driver's license and drives himself to some his doctor appointments, as well as picks his son up from work on occasion. He testified that aside from medication prescribed by his primary care physician, he does not receive any other formal mental health treatment of any kind, including therapy or counseling. With regard to his activities of daily living, he testified that he does sometimes go grocery shopping (using an electric scooter). This information is relatively consistent with the longitudinal medical evidence of record. In a function report completed by [Plaintiff] on July 24, 2021, [Plaintiff] alleged that he is unable to wear socks or shoes due to complex regional pain syndrome. He further alleged that he is unable to sit or stand for long periods of

2

time. He also alleged that medications make it difficult for him to stay coherent. He indicated that he gets dizzy, lightheaded, and nauseous. He also indicated that he needs a cane to maintain balance and that some days he cannot move his head from right to left. He further indicated that he cannot feel his fingers and drops things.

At the hearing, [Plaintiff] reported he lives with his family, including his girlfriend and his teenage children, ages nineteen (19), eighteen (18), and sixteen (16). In terms of his education, he testified that he received his high school diploma. He testified he is not working right now. Again, he testified that he has a driver's license. He testified that he last worked at Papa John's in 2017. He testified that he is unable to work because he has not been able to wear socks or shoes for the past four (4) or five (5) years. He testified that he spends most of his time in bed, with his feet elevated. He further testified his medications, including Percocet and Trazadone, cause him to be disoriented.

He testified that when he goes out, he wears flip-flops. As it relates to his abilities and limitations, he testified that he can only walk for five (5) minutes before needing to sit down and take a break. He testified that he can only stand in a single spot for about five (5) minutes also. He testified that sitting for long periods puts strain on his back. He testified that his feet swell as well when he sits. He testified that in addition to Percocet and Trazadone, he also takes medication and insulin for diabetes, as well as a vitamin D supplement. He testified that he has to use an electric scooter if he goes grocery shopping.

(R. at 855–56 (citations to exhibits omitted).)

### B. Relevant Medical Records and Opinions

The ALJ summarized the relevant medical records as to Plaintiff's alleged impairments as follows:

Chronic pain was treated at Hocking Valley Community Hospital on September 3, 2019. Musculoskeletal findings were summarized with the following:

> "[Plaintiff] has moderate difficulty transitioning from sitting to standing. The patient has an antalgic gait. The lumbar spine demonstrates a flexion biased curve. Palpation reveals tenderness over the left lumber, left sacral spine. Lumbosacral range of motion is limited in extension, left rotation, left lateral band. Lumbar facet loading produces pain on the left. There is no deformity to the lumbosacral spine. FABER Patrick test produces pain in the lumbar spine, left sacral spine. There is mild abnormality in muscle tone in the lumbosacral spine. Trigger points are not present in the lumbosacral spine musculature. Muscle strength is 5/5 in the bilateral lower extremities. Seated straight leg raise is negative in

>the lower extremity for leg pain radiating to the foot from the low back."

Neurologically, cranial nerves II-XII were tested grossly and were intact. The deep tendon reflexes of the upper and lower extremities were symmetrical. They were graded at 2/4. Cerebellar function was normal. The gait was normal. Sensory testing for pain (pinprick), light touch, position, and vibration was intact. [Plaintiff] was diagnosed with spondylosis of lumbar region without myelopathy or radiculopathy. A single series of left lumbar facet block was ordered.

Evaluation and treatment of foot pain was conducted at Hocking Valley Pain Management on February 18, 2020. The pain was described as burning and as rated at 7/10. [Plaintiff] reported that the pain was increased with standing and walking, and relieved by medication and lying down. [Plaintiff] also endorsed numbness/tingling in the bilateral feet. He denied weakness. On exam, he had normal strength and normal reflexes. A cranial nerve deficit was present. There was no sensory deficit. However, there was decreased sensation. Psychiatric exam revealed a normal mood and affect. Speech and behavior were normal. Judgment and thought content were normal. Cognition and memory were normal. [Plaintiff] was noted as stable on Percocet dosing. There were no signs of addiction or dependency. It was noted he was unable to take Gabapentin or Lyrica due to side effects.

Burning pain rated at 8/10 was reported by [Plaintiff] during evaluation and treatment with Hocking Valley Pain Management on April 14, 2020. [Plaintiff]'s musculoskeletal exam was summarized as follows:

>"[Plaintiff] has moderate difficulty transitioning from sitting to standing. The patient has a(n) antalgic gait. The lumbar spine demonstrates a flexion biased curve. Palpation reveals tenderness over the bilateral lumbar, right lumbar, bilateral lumbar spine. Lumbosacral range of motion is limited in extension, right rotation, right lateral bend. Lumbar facet loading produces pain on the right side. There is no deformity to the lumbosacral spine. FABER Patrick test produces pain in the right lumbar spine, right sacral spine. There is mild abnormality in muscle tone in the lumbosacral spine. Trigger points are not present in the lumbosacral spine musculature. Muscle strength is 5/5 in the bilateral lower extremities. Seated straight leg raise is negative in the lower extremity for leg pain radiating to the foot from the low back[.]"

Neuropathy was diagnosed.

Bilateral foot pain was once again evaluated and treated by Hocking Valley Pain Management on June 1, 2020. Similar findings to previous visits were made.

Right foot pain was evaluated at treated by Hocking Valley Pain Management on August 18, 2020. [Plaintiff] endorsed weakness to his bilateral upper and lower extremities. On exam, there was decreased sensation to the bilateral feet. It was noted that [Plaintiff] was using his controlled substance medication appropriately to increase activity and functional capacity. There were no signs of addiction or diversion. No significant side effect were reported.

Shooting, sharp and burning pain rated at 7/10 was reported by [Plaintiff] during evaluation and treatment on October 15, 2020. Aside from bilateral foot pain, review of systems was negative. On exam, decreased sensation was again present in the bilateral feet. Unspecified neuralgia and neuritis was diagnosed.

During evaluation and treatment of bilateral foot pain with Hocking Valley Pain Management on December 10, 2020, [Plaintiff] reported symptoms of aching, throbbing, burning, exhaustion, tiredness, and penetrating and unbearable pain, rated at 7/10. [Plaintiff] reported increased pain with doing up and down stairs, standing, walking, pivoting, rising after sitting, lateral movements, any weightbearing, and inactivity. He reported relief from pain with relaxation, pain medication, and lying down. He endorsed both numbness/tingling and weakness to the bilateral lower extremities. [Plaintiff] reported good initial relief from Percocet 5/325, but indicated that it was no longer helping as much. Once again, decreased sensation to the bilateral feet was present on exam. Unspecified neuralgia and neuritis was again diagnosed.

MRI of the lumbar spine taken at Fairfield Community Health Center on December 23, 2020 showed mild multilevel degenerative disc disease, greatest at L3-L4 [.] X-rays of the bilateral wrists taken on this date were unremarkable[.] X-rays of the lumbar spine showed mild disc space narrowing and facet arthropathy from L3-L4 to L5-S1. They also showed mild levoconvex curvature of the lumbar spine.

Hocking Valley Pain Management saw [Plaintiff] for evaluation and treatment of neuropathy pain on February 8, 2021. [Plaintiff] described the pain as burning and rated it as 7/10. He reported the pain was increased with walking and inactivity. He reported that it was relieved by lying down and propping his feet up. He endorsed having numbness/tingling to all of his extremities. He denied weakness to all of his extremities, especially in his legs. Review of systems was positive for generalized neuropathic pain. On exam, the right leg was not normal to inspection. There was erythema and edema present. Tenderness to palpation was also present, as well as allodynia. Muscle strength was 4/5. Strength was diminished in the quadriceps, hamstrings, tibialis anterior, and extensor digitorum. Neurologically, cranial nerves 2-12 were tested and were grossly intact. The deep tendon reflexes were not tested in the right leg. Plantar reflexes (Babinski) revealed toes were downgoing. Cerebellar function was normal. Romberg's test was negative. The gait was abnormal. Sensory testing for pain (pinprick), light touch, position, and vibration

were increase in the right foot and ankle. Psychiatric exam was also performed. [Plaintiff] was oriented to person, place, and time. Speech was fluent, and words were clear. Though processes were coherent, and insight was good. There were no obsessive, compulsive, phobic or delusional thoughts. There were no illusions or hallucinations. Regarding [Plaintiff]'s fund of knowledge, awareness of current events and past history were appropriate for age. Cognitive functions were intact. His mood was neutral, and his affect was appropriate. There were no loose associations. Unspecified neuralgia and neuritis was once again diagnosed.

X-rays of the cervical spine April 1, 2021 showed mild spondylosis at C5-C6. X-rays of the cervical spine showed mild spondylosis at C5-C6.

On April 5, 2021, Hocking Valley Pain Management saw [Plaintiff] for evaluation and treatment of bilateral leg and foot pain. [Plaintiff] reported that the pain originated in the bilateral legs and radiated to the bilateral feet. It was described as aching and burning. He rated the severity at 7/10. He reported the pain was increased with any movement. He reported relief with relaxation and pain medication. He endorsed numbness/tingling to the bilateral legs, arms, hands and feet. He also endorsed having right leg weakness. Unspecified neuralgia and neuritis was yet again diagnosed.

Fairfield Healthcare Professionals saw [Plaintiff] on referral for neuropathy on April 20, 2021. On exam, [Plaintiff] had very decreased sensation to all four (4) extremities. He was not able to detect pinprick sensation until a few inches below the knees bilaterally, and halfway up the forearms bilaterally. As far as his gait and station, he was slow to get up, and used a cane to ambulate. He limped slightly. He was diagnosed with neuropathy and chronic back pain. Lumbosacral x-rays were ordered.

Chronic condition follow up was conducted at Fairfield Community Health Center on May 3, 2021. [Plaintiff] was diagnosed with uncontrolled type 2 diabetes mellitus with hyperglycemia, anxiety and depression, essential hypertension, neuropathy, low testosterone, tobacco use, and edema of both lower extremities.

At the request of the Social Security Administration, [Plaintiff] was also sent for a psychological consultative examination with Dr. Marc E.W. Miller, Ph.D. on May 3, 2021. He diagnosed [Plaintiff] with moderate to severe dysthymic disorder, moderate to severe generalized anxiety disorder, and attention deficit disorder. Dr. Miller concluded his report with the following functional assessment:

> "[Plaintiff]'s abilities and limitations in regard to understanding, remembering, and carrying out one and two step job instructions appear to be adequate. He is a high school graduate. He was, however, in an OWE program.

> His abilities and limitations in regard to his interaction with co-workers, supervisors, and the public indicate no significant difficulty. He's never been fixed [sic] from a job. No legal history is indicated other than a DUI in 1999. He got along well in school. He got along with coworkers. He no longer has any friends.
>
> [Plaintiff]'s abilities and limitations in regard to maintaining attention span and concentration indicate impairment. He has a history of attention deficit disorder and was on Ritalin. He did have difficulty during the interview.
>
> His abilities and limitations in regard to dealing with stress and pressure in a work setting indicate difficulty due to his anxiety and depression. He avoids going into stores due to his anxiety attacks. No panic attacks are noted. He tries to avoid the public. He primarily associates with family, but even this is limited."

Notes from Hocking Valley Pain Management document evaluation and treatment of bilateral foot pain on June 1, 2021. No new findings were made. It was noted that a neurologist was going to get an EMG of the bilateral lower extremities and an ultrasound of the bilateral feet.

Bilateral venous reflux exam was performed on July 1, 2021. There was no evidence of deep vein thrombosis or venous obstruction in the sampled veins of either extremity.

Progress notes from Hocking Valley Pain Management document additional evaluation and treatment of bilateral foot pain on July 26, 2021. Physical examination revealed reddened bilateral feet. There was extreme increased sensation. [Plaintiff] was unable to tolerate light touch. Range of motion was intact. Complex regional pain syndrome of bilateral lower limbs was diagnosed (Exhibit B6F/2-8).

Diabetes, depression, and external hemorrhoids were treated by Fairfield Community Health on August 25, 2021. Review of systems was positive for fatigue, chronic cough and wheezing, blood in stool, change in appetite, burning of extremities, difficulty initiating sleep, difficulty maintaining sleep, extremity weakness, headache, numbness in extremity, anxiety, depression, difficulty concentrating, feeling down, hopelessness, feelings of guilt, insomnia, little interest or pleasure in doing things, joint pain, and muscle weakness. [Plaintiff] was diagnosed with type 2 diabetes mellitus with hyperglycemia, essential (primary) hypertension, neuropathy, mood disorder, unspecified complex regional pain syndrome type 1, and bleeding external hemorrhoids.

Follow up visit for neurology was conducted by Fairfield Healthcare Professionals Neurology on October 14, 2021. Summary of [Plaintiff]'s history noted the following:

> "EMG of Lower extremities did not show any evidence of radiculopathy. Symptoms likely due to diabetic peripheral neuropathy. EMG of upper extremities was consistent with carpal tunnel, no evidence of radiculopathy or peripheral neuropathy. Possible shoulder impingement based on physical exam.
>
> He also has since had a venous insufficiency test with vascular due to come [sic] edema issues, this was negative for any DVT or venous obstruction.
>
> […]
>
> Unfortunately his symptoms are about the same as they were last visit. Still has a lot of burning sensation in his feet bilaterally, he actually thinks the burning sensations may have increased in intensity slightly since last time. The sensations are slightly more prominent on his right foot, which makes it difficult to maintain his balance. He is still utilizing a cane. He denies any falls, but acknowledges that he is fairly unsteady on his feet.
>
> He tells me that his pain physician told him that he likely has complex regional pain syndrome, possibly due to his many feet surgeries in the past. He continues on oxycodone TID."

Peripheral neuropathy and tobacco use were diagnosed. [Plaintiff] was noted to be at risk for falls.

March 14, 2022 encounter with Hocking Valley Pain Management was conducted for evaluation and treatment of right leg pain. On exam, the bilateral feet were discolored. There was increased sensitivity to lightest touch. Range of motion was intact. [Plaintiff] was observed as ambulating with a cane. Paroxysmal nerve pain was diagnosed. Plan was summarized in the following manner:

> "I have refilled the patient's opioid prescriptions at current Percocet does and schedule. I feel these medications are improving the patient's quality of life and allow [him] to tolerate activities of daily living as well as participate in recreational activity. The patient does not report intolerable side effects. I do not detect any signs of addiction or diversion. The patient was given a prescription for Percocet.
> UDS ordered today.

8

> The patient is using their controlled substance medication appropriately to increase activity and functional capacity. There are no signs of addiction or diversion. There are no significant side effects reported. OARRS report was reviewed and no abnormalities were identified. Medication were refilled as below."

Transthoracic echocardiography was performed at Fairfield Medical Center on April 26, 2022. Left ventricle cavity size was normal. Wall thickness was mildly increased. Systolic function was normal. The estimated ejection fraction was sixty to sixty-five percent (60-65%). Wall motion was normal. There were no regional well abnormalities. Left ventricular diastolic function parameters were normal. Billed diagnosis codes listed were for dyspnea and unspecified chest pain.

Rest/stress single isotope SPECT myocardial perfusion imaging with gated SPECT imaging was also performed on April 26, 2022. There was no evidence of pharmacologically induced reversible perfusion defect to suggest ischemia. Overall, the left ventricular systolic function was normal, without regional wall motion abnormalities. Left ventricular ejection fraction was calculated to be sixty-two percent (62%). It was determined to be low risk SPECT myocardial perfusion imaging.

Single view x-ray of the abdomen taken at Fairfield Medical Center on April 29, 2022 revealed a small amount of stool throughout the colon, possibly representing mild constipation. There was a small amount of stool in the rectum as well. There was no gross obstruction. No abnormal calcifications were demonstrated in the abdomen or pelvis.

Nuclear medicine gastric emptying study was performed at Fairfield Medical Center on May 20, 2022. Findings included delayed gastric emptying. It was noted that [Plaintiff] was taking Oxycodone.

Although the presence of pathology is supported, and the diagnoses are consistent with the clinical presentation, as are the treatment modalities initiated, the degree of impairment alleged (i.e., total disability), is not supported for any durational period during the time at issue.

(R. at 856–62, (citations to exhibits omitted).)

### III.     ADMINISTRATIVE DECISION

On July 26, 2022, the ALJ issued her decision.  (R. at 844–71.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

9

2022. (R. at 850.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since January 1, 2020, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff has the following impairments that either singularly and/or in combination are severe: degenerative disc disease: peripheral neuropathy; diabetes mellitus; obesity; tendinosis of the right shoulder; foot lesions; club feet; depression; anxiety; and carpal tunnel syndrome. (*Id.*) At step three, the ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 851–53.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [Plaintiff] can stand and/or walk for a total of 4 hours in an 8-hour workday, but can stand and/or walk for no more than 30 minutes at a time, while changing position for one to two (1-2) minutes and remaining on task. He can sit for six hours in an 8-hour workday. [Plaintiff] can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop and crawl; occasionally push and pull with the lower extremities; frequently perform handling and fingering bilaterally;

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>> occasionally perform reaching overhead bilaterally; and frequently perform reaching to the front or laterally with the dominant right upper extremity. [Plaintiff] should avoid hazards, including working at unprotected heights or around dangerous machinery. He should never operate a motor vehicle or dangerous machinery. [Plaintiff] can perform simple, routine tasks, but not at a production rate pace (e.g., no assembly line work). [Plaintiff] requires a cane to ambulate.

(R. at 853–54.)

In addition, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id.* at 862–63.)

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work. (*Id.* at 863.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as an inspector, a hand packager, or an information clerk. (*Id.* at 864–65.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since January 1, 2020. (*Id.* at 865.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In his Statement of Errors, Plaintiff contends that he is limited to less than sedentary work.  (SSE PageID 1743–45.)  Specifically, Plaintiff argues:

> Substantial evidence supports a less than sedentary RFC in Plaintiff's claim, based on his experience of pain and symptoms from neuropathy, complicated by club feet, likely complex regional pain syndrome resulting from multiple foot surgeries, side effects of medications, the need to elevate his legs, and difficulty even wearing appropriate footwear. Plaintiff's experience of anxiety and depressive symptoms would further affect his ability to sustain full-time work and interact appropriately with coworkers, supervisors, and the general public.

(*Id.* PageID 1743.)  Plaintiff further argues that the ALJ "essentially summarized Plaintiff's medical evidence without properly analyzing that evidence in relation to his functional capabilities."  (*Id.* PageID 1745.)

The Commissioner counters that the ALJ properly evaluated the medical evidence in the record, including the prior administrative medical findings, along with Plaintiff's allegations and testimony, and determined an appropriate RFC to correspond with this evaluation.  (ECF No. 11 PageID 1752–60.)  According to the Commissioner, the ALJ formulated this RFC through a detailed and proper evaluation of the record and accommodated Plaintiff's various impairments with restrictive exertional, postural, manipulative, environmental, and mental limitations.  (*Id.* PageID 1758–59.)  The Commissioner argues that Plaintiff's allegation of error is "ultimately an impermissible request that this Court reweigh evidence in his favor."  (*Id.* PageID 1752.)

As a preliminary matter, a claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  As this Court has explained:

> The RFC "circumscribes '[Plaintiff]'s residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about [Plaintiff]'s abilities.'" *Johnson v. Comm'r of Soc. Sec.*, No. 08-CV-14363, 2010 WL 520725, at *7 (E.D. Mich. Feb. 8, 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). This means that "[Plaintiff's] severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Johnson*, 2010 WL 520725, at *7 (quotation omitted)). "'The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Id.*, 2010 WL 520725, at *7 (alteration in original) (quoting *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "'Put another way, the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3, 2018) (quoting *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014)). Importantly, Plaintiff "bears the burden to show that an impairment invokes work-related limitations." *Hicks*, 2018 WL 2074181, at *4 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

*Ray v. Comm'r of Soc. Sec.*, No. 2:20-CV-1897, 2021 WL 235828, at *4 (S.D. Ohio Jan. 25, 2021), *report and recommendation adopted sub nom. Ray v. Comm'r of Soc. Sec.,* 2:20-CV-1897, 2021 WL 4172926 (S.D. Ohio Sept. 14, 2021).

13

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The ALJ determines a claimant's RFC based on relevant evidence in the record, including objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The Undersigned finds that there is substantial evidence to support the ALJ's decision. The ALJ reviewed and analyzed objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings to reach her decision. (ECF No. 8-2 PageID 873–81.) The ALJ evaluated Plaintiff's medical records from 2019–2022, noting Plaintiff's self-reported symptoms as well as the medical provider's notes and test results. (*Id.* PageID 874–80.) The ALJ analyzed Plaintiff's pain level rating, ability to move, and/or the effectiveness of pain mediation in twelve pain treatment appointments. (*Id.* PageID 874–79.) For example, the ALJ noted that at Plaintiff's April 14, 2020, visit to a pain management facility, he reported a burning pain at 8/10 and had "moderate difficulty transitioning from sitting to standing." (*Id.* PageID 875.) At Plaintiff's March 14, 2022, visit to a pain management facility, he was observed ambulating with a cane but had an intact range of motion. (*Id.* PageID 879.) The ALJ analyzed the only consultative examination results and concluded that those results were persuasive after comparing them against the rest of Plaintiff's medical history: "[a]lthough it was based on only a one-time single examination, the clinical findings are consistent with the claimant's longitudinal treatment record." (*Id.* PageID 877–78, 80.)

Throughout the ALJ's analysis, she considered Plaintiff's self-reported symptoms and abilities and compared those with the objective medical evidence and medical opinions. (ECF No. 8-2 PageID 873–79.) For example, the ALJ analyzed Plaintiff's testimony regarding his daily activities and mental health treatment and found that "information is relatively consistent with the longitudinal medical evidence of record." (*Id.* PageID 873.) The ALJ evaluated the Plaintiff's self-completed function report and his hearing testimony. (*Id.* PageID 873–74.) Finally, the ALJ considered the prior administrative medical findings and found them not be not fully persuasive, as they were based on a partial evidentiary record. (*Id.* PageID 880.) The ALJ clearly complied with the applicable regulations. See, e.g., 20 C.F.R. § 404.1529 (consideration of course of treatment and daily activities); 20 C.F.R. § 1520c (evaluation of medical opinions and prior administrative medical findings).

While Plaintiff may have favored a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for her RFC determination, and her explanation is supported by substantial evidence. *Dickinson v. Comm'r of Soc. Sec.*, No 2:19-cv-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-cv-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013)). The ALJ met the statutory standard of substantial evidence which is "not high." *Biestek* v. Berryhill, 139 S. Ct. 1148, 1154 (2019) ("the threshold for such evidentiary sufficiency is not high").

For the foregoing reasons, the Undersigned finds that the ALJ's decision was supported by substantial evidence.

VI. **CONCLUSION**

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 10) be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED.**

VII. **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: November 12, 2024                    /s/ Elizabeth A. Preston Deavers
                                           **ELIZABETH A. PRESTON DEAVERS**
                                           **UNITED STATES MAGISTRATE JUDGE**